TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Rd.
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Attorneys for Plaintiff
SEAN MIRAN

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| Sean Miran, *on behalf of himself and all others similarly situated,*<br><br>                    Plaintiff,<br><br>        vs.<br><br>Hard Eight Nutrition LLC d/b/a BulkSupplements.com,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION  COMPLAINT FOR:**<br><br>(1) Fraudulent Concealment;<br>(2) Unjust Enrichment;<br>(3) Breach of Express Warranty;<br>(4) Violation of Cal. Bus. & Prof. Code §§ 17500, et seq.;<br>(5) Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;<br>(6) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; and<br>(7) Breach of Implied Warranty of Merchantability.<br><br>**DEMAND FOR JURY TRIAL** |

For this Class Action Complaint, Plaintiff Sean Miran, by undersigned counsel, states as follows:

## INTRODUCTION

1.      Defendant Hard Eight Nutrition LLC d/b/a BulkSupplements.com ("Defendant" or "Bulk") formulates, manufactures, advertises and sells "Magnesium Glycinate Powder" dietary supplement powder (the "Magnesium Supplements" or the "Supplements") throughout the United States that purport to contain 400 mg of Magnesium "as Magnesium Glycinate" per one serving comprised of 2,200 milligrams of powder.  It prominently displays the magnesium content of the Supplements as well as the number of servings contained in the product on the product's labels.

2.      However, it is impossible to obtain 400 mg of magnesium derived from magnesium glycinate in one 2,200 milligram serving of powder.  Magnesium glycinate simply possesses far too low a concentration of magnesium to do so.

3.      Accordingly, the Magnesium Supplements do not contain 400 mg of magnesium as magnesium glycinate per serving and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels. Instead, the Supplements contain significantly less magnesium as magnesium glycinate than what is claimed and displayed or zero magnesium derived from magnesium glycinate.

4.      In misstating the actual magnesium content of the Supplements, Bulk violates federal and state law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling. Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

2

**PARTIES**

5.      Plaintiff Sean Miran ("Plaintiff") is and at all times relevant hereto was an adult individual residing in Victorville, San Bernadino County, California. Plaintiff has purchased Bulk's Magnesium Supplements within the last four years including on January 7, 2024, from Bulk's online ebay.com store. Plaintiff viewed the front and back label of Defendant's Magnesium Supplements when he purchased the product.

6.      Defendant Hard Eight Nutrition LLC d/b/a BulkSupplements.com ("Bulk" or "Defendant") is a Nevada limited liability company with a principal place of business at 7511 Eastgate Road, Henderson, Nevada 89011-4058. Bulk markets, advertises, distributes and sells a magnesium nutritional supplement product throughout the United States, including California.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) during the Class Period Bulk sold its Magnesium Supplements to more than 100 people, (2) in the same period those sales, combined with Plaintiff's requested injunctive relief, punitive damages and attorneys' fees, exceeds $5,000,000, and (iii) there is minimal diversity because Plaintiff and Class Members and Defendant are citizens of different states.

8.      Venue is proper in this district and this Court has specific jurisdiction over Bulk because Plaintiff resides in this District and purchased Bulk's product at issue in this case from within this District.

**FACTUAL ALLEGATIONS**

*a. Defendant misrepresents that one serving of the Magnesium Supplement contains 400 mg of magnesium derived from magnesium glycinate*

9.      The amount and type of magnesium, as well as the number of servings, contained within Defendant's Magnesium Supplements are material to any consumer

3

seeking to purchase a magnesium supplement.

10.     Defendant purports to sell its Magnesium Supplements in the form of magnesium glycinate powder, which is known as a highly absorbable form of magnesium.

11.     Bulk's website advertises that "Magnesium Glycinate is a highly bioavailable form of magnesium, allowing for better absorption and utilization by the body compared to other forms."[1] It further claims that Magnesium Glycinate provides "Muscle Relaxation," "Stress Relief," "Bone Health," and "Mood Support."[2]

12.     Bulk labels and advertises its Magnesium Supplements in a manner that highlights the amount of magnesium as magnesium glycinate contained within each serving, as well as the number of servings provided.  As set forth in the below images, Bulk prominently displays that the Supplements contain Magnesium Glycinate and that one serving of 2,200 mg of powder contains 400 mg of "Magnesium (as Magnesium Glycinate)."  It also highlights the number of 2,200 mg servings contained within the product (*e.g.,* 113 servings in its 250 gram product).  Such representations constitute an express warranty regarding the Magnesium Supplements' magnesium content.

---

[1] https://www.bulksupplements.com/products/magnesium-glycinate-powder (last visited April 2, 2024).
[2] *Id.*

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   13.   Bulk sells its Magnesium Supplement in 100 gram, 250 gram, 500 gram,

23   1 kilogram, 5 kilogram and 25 kilogram packages. The labels for each Supplement

24   product uniformly claim that one serving of 2,200 milligrams of the Supplement

25   provides 400 mg of Magnesium (as Magnesium Glycinate) and note the number of

26   2,200 milligram servings provided.[3]

27   14.   Upon information and belief, Bulk labeled its Magnesium Supplement in

28
---
[3] https://www.bulksupplements.com/products/magnesium-glycinate-powder?variant=32133429100655 (last visited April 3, 2024).

a materially identical manner throughout the Class Period, stating that one 2,200 mg serving of the Supplement contains 400 mg of magnesium as magnesium glycinate.

15.    The U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound." *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/) (last visited April 3, 2024). Here, the Supplement Facts note that one serving of 2,200 mg of the Supplement contains "400 mg" of "Magnesium (as Magnesium Glycinate)."

16.    The Supplement Facts also note that the listed 400 mg of magnesium derived from magnesium glycinate constitutes 95% of the recommended Daily Value of magnesium. Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium, the recommended Daily Value for adults and children over four years is 400 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv). 95% of 400 milligrams is 399 milligrams.

### b. It is impossible for 2,200 mg of the Magnesium Supplement to contain 400 mg of magnesium as magnesium glycinate

17.    Defendant's representations are false and misleading.

18.    It is impossible for one 2,200 mg serving of Defendant's Magnesium Supplement to contain the advertised and warranted 400 mg of magnesium as magnesium glycinate in light of the amount of magnesium contained in magnesium glycinate.

7

19.    Magnesium glycinate contains only 14.1% magnesium by mass.[4] Accordingly, approximately 2,830 mg of magnesium glycinate is needed to obtain 400 mg of magnesium.

20.    In light of the foregoing, Defendant's representations that one serving of 2,200 mg of the Magnesium Supplements contains 400 mg of magnesium as magnesium glycinate is impossible and false.

21.    Instead, the Supplements either (1) contain less magnesium as magnesium glycinate than advertised and/or (2) contain magnesium from undisclosed sources other than the warranted and advertised magnesium glycinate.

22.    For instance, if the magnesium provided by the Supplements only comes from magnesium glycinate, then one 2,200 mg serving only provides 310 mg of magnesium (as magnesium glycinate), 22.5% less than the advertised and warranted 400 mg.  Additionally, in this scenario the number of servings providing 400 mg of magnesium as magnesium glycinate is less than advertised. Thus, for Bulk's 250 gram product, there are 88 servings of 400 mg of magnesium as magnesium glycinate, not the 113 servings that Bulk advertises and warrants.[5]

23.    In the alternative, the magnesium in the Supplement may be derived from other sources of magnesium, such as magnesium oxide, which contains a higher percentage of elemental magnesium than magnesium glycinate but which is less desirable to consumers because, *inter alia*, it is not absorbed by the body as well as magnesium glycinate and therefore is less desirable to those consumers who seek to raise their magnesium levels.

24.    The above misrepresentations regarding the contents and ingredients of

---

[4] *See, e.g.,* https://en.wikipedia.org/wiki/Magnesium_glycinate (last visited April 3, 2024).

[5]    250 grams = 250,000 milligrams

2,836 milligrams of magnesium glycinate = 400 mg of magnesium

250,000 / 2,830 = 88

8

Defendant's Magnesium Supplements are unlawful under both state and federal law. The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).   In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

25.     Bulk's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

26.     California prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Food, Drug, and Cosmetic Law," Cal. Health & Safety Code § 109875, *et seq.* (the "Sherman Law").  The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as the food labeling regulations of Cal. Health & Safety Code § 110100(a). Accordingly, the Sherman Law also provides that food or nutritional supplements are misbranded if its labeling is "false or misleading in any particular." *Id.*

27.     Bulk's representations regarding the magnesium contents of its Magnesium Supplement – including its representation that there are 400 mg of magnesium derived from magnesium glycinate in one 2,000 mg serving – are material. Reasonable consumers of magnesium supplements base their purchasing decisions on

the advertised and warranted amount of magnesium contained therein and the source from which such magnesium is derived.  Consumers specifically prize magnesium derived from magnesium glycinate over other sources of magnesium because of its "high absorption," as Defendant claims.  Additionally, consumers reasonably rely of Defendant's label to accurately determine the identity, amount and source of any dietary ingredients included within the Defendant's Magnesium Supplements. Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Supplements' magnesium contents.

28.    Further, such misrepresentations also breach Defendant's express warranty that each serving of the Magnesium Supplement contains magnesium "as magnesium glycinate" in the amount listed on its label (400mg).

29.    The difference between the Magnesium Supplements promised and the products sold is significant and material because the sold products do not contain 400 mg of magnesium derived from magnesium glycinate per serving. The amount and source of actual magnesium provided, and the measure of magnesium per serving, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium supplementation – whether for "Muscle Relaxation," "Stress Relief," "Bone Health," and "Mood Support" as Bulk claims – are left to ingest less magnesium as magnesium glycinate than Defendant states will be provided and/or are left to ingest magnesium that is derived from sources of magnesium that are inferior and less desirable than the magnesium glycinate promised by the Defendant.

30.    Because Plaintiff and Class Members purchased a product that contains less magnesium as magnesium glycinate than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded

10

nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature and composition of the magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the magnesium as magnesium glycinate actually delivered with the Supplements.

31.     On March 14, 2024, prior to initiating this action, Plaintiff's counsel sent a demand letter to Bulk on behalf of Plaintiff.  The letter, *inter alia,* (1) alleged that Bulk mislabels and falsely misrepresents the contents of its Magnesium Supplements and the Supplements contain less magnesium as magnesium glycinate than advertised in light of the amount of magnesium in magnesium glycinate; (2) alleged that Bulk breached its written and implied warranties and violated, *inter alia,* the Sherman Food, Drug, and Cosmetic Law, the California Consumers Legal Remedies Act, and the Magnuson-Moss Warranty Act; (3) alleged that Plaintiff and similarly situated consumers had been harmed and injured because they were misled into purchasing Bulk's Magnesium Supplements and would have paid significantly less for or not purchased the supplements had they known about the true magnesium content of the supplements; and (4) demanded that "Bulk immediately cease the above unlawful practices, cease mislabeling and misbranding Bulk's Magnesium Supplements," demanded that it provide Plaintiff "and all other United States purchasers of the Magnesium Supplements within the last four years with full restitution of all improper revenues and ill-gotten profits derived from Bulk's wrongful conduct to the fullest extent permitted by law," and asserted that "purchasers of misbranded nutritional supplements like Mr. Miran are entitled to a restitution refund of the purchase price of the misbranded supplements."

11

**CLASS ACTION ALLEGATIONS**

### A. The Class

32.     Plaintiff brings this action on his own behalf and on behalf of the following Classes of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

> **Nationwide Class**: All persons in the United States who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

> **California Subclass**: All persons residing in California who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

33.     Any legal entity, Defendant and its employees or agents are excluded from the Class.

### B. Numerosity

34.     Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, Plaintiff believes, and on that basis alleges, that Bulk has sold its Magnesium Supplements to thousands of United States and California residents during the Class Period and therefore there are thousands of members of each of the Classes.

### C. Common Questions of Law and Fact

35.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

> a.    Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's magnesium content;

12

b.    Whether Defendant's sale of the Magnesium Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of, *inter alia*, Cal. Bus. & Prof. Code §§ 1770 *et seq.*, including: whether Defendant misrepresents the source, sponsorship, approval, or certification of their Magnesium Supplements; whether Defendant represents that the Magnesium Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Supplements with intent not to sell them as advertised;

c.    Whether Defendant's sale of the Magnesium Supplements constitutes misleading and deceptive advertising under, *inter alia*, Cal. Bus. & Prof. Code § 17500;

d.    Whether Defendant's sale of the Magnesium Supplements constitutes "unlawful," "unfair," or "fraudulent" business acts or practices under, *inter alia,* Cal. Bus. & Prof. Code §§ 17200 *et seq.*, including: whether Defendant's sale of the Magnesium Supplements constitutes "unlawful" or "unfair" business practices by violating the public policies set out in Cal. Bus. & Prof. Code §§ 1770 *et seq.*, Cal. Bus. & Prof. Code §§ 17500 and other California and federal statutes and regulations; whether Defendant's sale of the Magnesium Supplements is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; and whether Defendant's sale of the Magnesium Supplements constitutes an "unfair" business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury could not be reasonably avoided by consumers;

e.    Whether Defendant's sale of the Magnesium Supplements constitutes a breach of warranty;

f.    Whether Defendant concealed material facts concerning the Magnesium

13

Supplements;

g. Whether Defendant engaged in unconscionable commercial practices in failing to disclose material information concerning the Magnesium Supplements;

h. The nature and extent of damages, restitution, equitable remedies, and other relief to which Plaintiff and the Class are entitled; and

i. Whether Plaintiff and the Class should be awarded attorneys' fees and the costs of suit.

### D. **Typicality**

36. The Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased the Magnesium Supplements within the last four years, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

### E. **Protecting the Interests of the Class Members**

37. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interest which might cause them not to vigorously pursue this action.

### F. **Proceeding Via Class Action is Superior and Advisable**

38. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation

14

presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

39.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
**Fraudulent Concealment**
**(Plaintiff on behalf of the Nationwide Class or in the alternative the California Subclass)**

40.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

41.    By failing to disclose and concealing the contents of the Magnesium Supplements from Plaintiff and Class Members (i.e., the Magnesium Supplements do not include the amount of magnesium derived from magnesium glycinate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

42.    Defendant knew or should have known that the Magnesium Supplements did not contain the amount of magnesium as magnesium glycinate advertised and warranted and were not suitable for their intended use.

43.    Defendant was under a duty to Plaintiff and Class Members to disclose and/or not misrepresent the contents of the Magnesium Supplements because:

    a.    Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements, including the type of magnesium Defendant included in the Supplements;

15

b.  Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of magnesium as magnesium glycinate advertised and warranted; and,

c.  Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Supplements.

44.  On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

45.  The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

46.  Plaintiff and the Classes relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

47.  By failing to disclose the true contents of the Magnesium Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

48.  Had Plaintiff and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted magnesium as magnesium glycinate, they would not have purchased the Magnesium Supplements or would have paid less for them.

49.  As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

50.  Accordingly, Defendant is liable to Plaintiff and Class Members for

16

damages in an amount to be proven at trial.

51.     Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff' and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

52.     Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchases of falsely advertised and misbranded Magnesium Supplements.  Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving magnesium supplements of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

53.     Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
**(Plaintiff on behalf of the Nationwide Class or in the alternative the California Subclass)**

54.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

55.     As a result of Defendant's fraudulent acts, and omissions related to the magnesium contents of the Supplement, Defendant obtained monies which rightfully

17

belong to Plaintiff, and the Class Members to the detriment of Plaintiff and Class Members.

56.     Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the true contents of the Supplements, paid a higher price for Supplements, which actually had lower values.  Defendant also received monies for Supplements that Plaintiff and the Class Members would not have otherwise purchased or leased.

57.     It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

58.     Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

59.     As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

60.     Plaintiff does not seek restitution under his Unjust Enrichment claim.  Rather, Plaintiff and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

61.     Additionally, Plaintiff and Class Members seek injunctive relief enjoining Defendant from further deceptive distribution and sales practices with respect to the Supplement, enjoining Defendant from selling the Supplement with misleading information concerning the Supplement's true magnesium content and source.  Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Cal. Com. Code § 2313
### (On Behalf of the California Subclass)

62.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

18

63.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that the product contains 400mg of magnesium as magnesium glycinate per each 2,200 mg serving.

64.     The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

65.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

66.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium as magnesium glycinate as alleged above.

67.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

## FOURTH CAUSE OF ACTION
### Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.- Untrue, Misleading and Deceptive Advertising
### (On Behalf of the California Subclass)

68.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69.     At all material times, Defendant engaged in a scheme of offering the

19

Magnesium Supplements for sale to Plaintiff and other members of the Class by way of, *inter alia*, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

70.     These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements as alleged herein. Such advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

71.      Defendant's advertisements and other inducements come within the definition of advertising as contained in Cal. Bus. Prof. Code §§ 17500, et seq., in that such promotional materials were intended as inducements to purchase Defendant's Magnesium Supplements and are statements disseminated by Defendant to Plaintiff and other members of the Class.

72.     Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' magnesium content, and specifically the amount of magnesium as magnesium glycinate, were false, misleading and/or deceptive.

73.     Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiff and members of the Class, were among the intended targets of such representations.

74.     The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true source and amount of magnesium, and thus were violations of Cal. Bus. Prof. Code §§ 17500, et seq.

75.     Plaintiff and Class members were harmed and suffered injury as a result

of Defendant's violations of the Cal. Bus. Prof. Code §§ 17500, et seq. Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

76.     Accordingly, Plaintiff and members of the Class seek damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

### FIFTH CAUSE OF ACTION
**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* - Misrepresentation of a product's standard, quality, sponsorship approval, and/or certification**
**(On Behalf of the California Subclass)**

77.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

78.     Defendant's Magnesium Supplements are a "good" as defined by California Civil Code §1761(a).

79.     Defendant is a "person" as defined by California Civil Code § 1761(c).

80.     Plaintiff and California Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Magnesium Supplements for personal, family or household use.

81.     The sale of Defendant's Magnesium Supplements to Plaintiff and California Class members is a "transaction" as defined by California Civil Code §1761(e).

82.     By labeling their Magnesium Supplements as containing a specific amount of magnesium as magnesium glycinate when in fact these products contained less than the advertised amount of magnesium, Defendant violated California Civil

21

Code §§ 1770(a)(2), (5), (7) and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Magnesium Supplements.

83.     As a result of Defendant's conduct, Plaintiff and California Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices. Had Defendant disclosed the true nature and/or not falsely represented its Magnesium Supplements' magnesium content, Plaintiff and the California Class would not have been misled into purchasing Defendant's Magnesium Supplements, or, alternatively, would have paid significantly less for them.

84.     Additionally, misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a refund of the purchase price of the misbrand nutritional supplements.

85.     On March 14, 2024, Plaintiff provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendant correct such violations.  Accordingly, Plaintiff seeks all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorney's fees and cost and any other relief that the Court deems proper.

## SIXTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.
### (On Behalf of the California Subclass)

86.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

87.     The Sherman Law, Cal. Health & Safety Code §§ 109875 et seq., broadly prohibits the misbranding of any food or drug products.

88.    Defendant is a person within the meaning of Cal. Health & Safety Code § 109995.

89.    Additionally, California has adopted as its own, and as the Sherman Law expressly incorporates, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as "the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a).  Federal statutes and regulations, including, but not limited to, 21 U.S.C. §§ 321, 343, prohibit the mislabeling and misbranding of food products, including nutritional supplements. See 21 U.S.C. § 321(ff) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter.").

90.    Federal statutes and regulations prohibit misleading consumers by misrepresenting a product's nutritional ingredients and including an ingredient or an amount of an ingredient on the Magnesium Supplements' nutritional labels that is not actually included in the products themselves.

91.    The California Civil Code § 1770(a)(2), (5), (7) and (9) also prohibits mislabeling food misrepresenting the standard, quality, sponsorship, approval, and/or certification of food products, as noted above.

92.    The business practices alleged above are unlawful under Business and Professional Code §§ 17500, et seq., California Civil Code §§ 1770(a)(2), (5), (7) and (9) and the Sherman Law, each of which forbids the untrue, fraudulent, deceptive, and/or misleading marketing, advertisement, packaging and labelling of food products and dietary supplements.

93.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff and members of the Class have suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements' magnesium contents. Had Plaintiff and members of the Class known that Defendant's materials, advertisement and other

23

inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements, they would not have purchased said products. Likewise, Defendant's misleading and deceptive practices caused Plaintiff to purchase Defendant's Magnesium Supplements and/or pay more than they would have otherwise had they know the true nature of the contents of the Magnesium Supplements.

94.     As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded product.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability Pursuant to Cal. Com. Code § 2314
### (On Behalf of the California Subclass)

95.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

96.     Defendant is a merchant with respect to the Magnesium Supplements.

97.     The Magnesium Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class Members.

98.     An implied warranty that the Magnesium Supplements were merchantable arose by operation of law as part of the sale of the Magnesium Supplements.

99.     Defendant breached the implied warranty of merchantability in that the

24

Magnesium Supplements do not contain the amount of advertised magnesium derived from magnesium glycinate, do not provide the benefits associated with the warranted and advertised 400 mg of magnesium as magnesium glycinate per serving, and thus were not in merchantable condition when Plaintiff and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

100.   Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

101.   As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

a.   An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.   An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c.   An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d.   An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e.   Reasonable attorneys' fees and costs;

f.   Pre-judgment and post-judgment interest, as provided by law;

g.   Such other and further relief as this Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  April 17, 2024

By: _/s/ Trinette G. Kent_
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiff*

26